**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDUARDO RAMIREZ, | : |
| | : |
| Plaintiff, | : Civil Action |
| | : No. 24-cv-3035-JP |
| v. | : |
| | : |
| CITY OF PHILADELPHIA, *et al.,* | : |
| | : |
| Defendants. | : |

**REPLY-MEMORANDUM OF LAW IN SUPPORT OF NON-PARTY
PHILADELPHIA DISTRICT ATTORNEY'S OFFICE'S MOTION TO QUASH
SUBPOENA FOR DEPOSITION TESTIMONY, OR IN THE ALTERNATIVE,
MOTION FOR A PROTECTIVE ORDER**

## I.    INTRODUCTION

While Defendant Worrell takes pains attempting to justify his redundant subpoena for the deposition testimony of a *fourth* non-party employee of the DAO concerning the Commonwealth's position in Plaintiff's underlying state post-conviction proceedings, he utterly fails to carry his burden of demonstrating relevance and proportionality to the needs of this civil rights action. Defendant Worrell's Response in Opposition, which is rife with factual misrepresentations and dubious legal arguments, also fails to set forth any grounds sufficient to overcome the protections of bedrock privileges invoked by the DAO, nor does it meaningfully address the standard for protecting non-parties from undue burden.

It is evident that Defendant Worrell wishes to proceed as if the DAO were a party-opponent to this litigation when it is not. It is equally evident that Defendant

1

Worrell pursues this irrelevant and redundant discovery in bad faith for purposes of annoying, oppressing, embarrassing, and causing undue burden on the DAO and its non-party employees. As much as Defendant Worrell would like this case to be a referendum on the DAO's general review of post-conviction cases, this civil rights case and the federal courts are not a proper forum for such endeavors. *See, e.g., Hicks v. City of Philadelphia*, 783 F.Supp.3d 834, 858 (E.D. Pa. 2025) (noting that, if there exists "a need to correct perceived problems with the DAO's conviction review process," civil rights litigation is not the venue for it).

In keeping with the numerous prior rulings of courts of this District, the DAO respectfully submits that this Court should not countenance Defendant Worrell's abuse of the discovery process to improperly and baselessly vilify non-party attorneys for the Commonwealth, particularly when the requested discovery is not relevant or proportional the needs of the instant civil rights action, and is also cumulative of three prior depositions on the same subject matter.

## II.    ARGUMENT

### a.  Motion to Quash

#### *Relevance and Proportionality*

In his Response in Opposition (ECF No. 55), Defendant Worrell predominantly relies on information contained in the DAO's Motion in an attempt to meet his burden of establishing the relevance and proportionality of the requested discovery. *See* Defendant Worrell's Response in Opposition, ECF No. 55, at 10. However, even under the broad standards for relevance and proportionality, Defendant Worrell patently

2

fails to establish any concrete link between the requested deposition testimony and any actual claim or defense raised in this civil rights action, nor any issue that "is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Instead, Defendant Worrell makes abundantly clear that he seeks to depose ADA Nelson to obtain information that is irrelevant and not proportional to the needs of the case. Defendant Worrell asserts that ADA Nelson's testimony would bear on "the scope and nature of DAO's post-conviction review and investigation, the information considered during that process, the accuracy and completeness of the factual record assembled by the DAO, the consistency of the DAO's various positions throughout post-conviction proceedings, as well as the factual and institutional basis for the DAO's ultimate confession of error." Defendant Worrell's Response in Opposition, ECF No. 55, at 10. Despite the fact that the DAO's conduct in Plaintiff's state post-conviction proceedings is not at issue in this case, Defendant Worrell's subpoena explicitly seeks to uncover information for the purpose of "evaluating the legitimacy of [the Commonwealth's] post-conviction review," *id.* at 19, and to seek "adversarial testing of [the DAO's] representations" in the PCRA proceedings, Response in Opposition to Plaintiff's Motion for Leave, ECF No. 58, at 21.

As correctly argued in Plaintiff's proposed Memorandum in reply (ECF No. 57-2), the Commonwealth's conduct and exercise of prosecutorial discretion in underlying state post-conviction proceedings is not relevant for purposes of establishing the "favorable termination" element of a malicious prosecution claim. All that need be established is that the "criminal prosecution ended without a

3

conviction." *Thompson v. Clark*, 596 U.S. 36, 39 (2022). Defendant Worrell's subpoena for a *fourth* deposition of a non-party on the topic of the post-conviction process leading to the PCRA court's independent review and ultimate grant of relief seeks redundant discovery which is simply not relevant or proportional to the needs of this case.

Defendant Worrell has offered no attempt to link the requested discovery to favorable termination, nor any other element of a claim or defense that is actually implicated by Plaintiff's civil rights claims against Defendant Worrell and other Defendants. Instead, Defendant Worrell concedes that "favorable termination is not the issue" and goes on to posit that he should be permitted to "test the factual basis and reliability of allegations the DAO later adopted and republished against" him. *See* Defendant Worrell's Response in Opposition to Plaintiff's Motion for Leave, ECF No. 58, at 2. However, as noted above, courts of this District have previously found that collateral attempts to invalidate or second-guess the result of state post-conviction proceedings have no place in the context of a civil rights action under 42 U.S.C. § 1983. *See Hicks*, 783 F. Supp. 3d at 856–58 (declining to reach the merits of defendants' irrelevant challenges to the validity of a state court order of *vacatur*); *see also Brown v. City of Philadelphia*, No. 2:20-cv-2681 (E.D.Pa. Jan. 8, 2021) (attached as exhibit to Plaintiff's Motion, ECF No. 57-2).

In *Hicks*, for instance, the Hon. John F. Murphy considered the defendants' "strident critique of the DAO's conduct before the PCRA court" and remarkably similar arguments that the PCRA proceedings that overturned the plaintiff's

4

convictions were illegitimate. 783 F. Supp. 3d at 856. In declining to consider the merits of these arguments, the *Hicks* court expressed wariness of "allowing a § 1983 suit to undermine a state court's final decision to vacate a conviction." *Id.* (emphasis omitted). To rule otherwise would defeat the requirement of finality implicit in "favorable termination" and would "defy the notion of comity that exists between our national and state governments." *Id.* (internal quotation omitted). Similarly, in declining to entertain an identical argument in *Brown*, the Hon. Paul S. Diamond explicitly found that the "law does not permit" a federal court to engage in collateral review of the validity of a final state court order vacating a conviction. *See* Order, at 7, *Brown*, No. 2:20-cv-2681; ECF No. 57-2. Non-party DAO notes that the defendants in *Hicks* and *Brown* had a more colorable argument than does Defendant Worrell, since those defendants sought to question the very jurisdiction of the state court to vacate the convictions at issue, something not present here.

Although Defendant Worrell disclaims that he seeks to collaterally challenge the PCRA court's orders of *vacatur* and *nolle prosequi*, his arguments, subpoena, and conduct at prior depositions have clearly and repeatedly evinced an unmistakable resolve to challenge and cast doubt on the validity of the DAO's position in the PCRA proceedings and the PCRA court's resulting orders. *See, e.g.*, Defendant Worrell's Response in Opposition, ECF No. 55, at 10, 19. From the *Hicks* and *Brown* decisions, it follows that, like the PCRA court's final order vacating Plaintiff's conviction, the DAO's conduct and exercise of discretion in the PCRA proceedings below are not

5

subject to collateral review in this proceeding and are immaterial to the substantive claims and defenses of this matter.

But even if he had established relevance, Defendant Worrell's arguments regarding proportionality likewise fail. Defendant Worrell fails to demonstrate how this fourth deposition of a non-party DAO employee would be non-cumulative of the prior three depositions on the same subject. Defendant Worrell offers no argument whatsoever regarding the mandates of Rule 26(b)(2)(C), which requires that a court "*must* limit the frequency or extent of discovery otherwise allowed by these rules" where, among other things, the requested discovery is "cumulative or duplicative, or can be obtained from some other source" that is less burdensome. Fed.R.Civ.P. 26(b)(2)(C).

Instead, Defendant Worrell attempts to manufacture a proportionality argument based on references to nonexistent "gaps" or outright misrepresentations of prior deposition testimony. While Defendant Worrell's mischaracterizations of deposition testimony and the underlying facts are too numerous for the DAO to address exhaustively herein, by way of example, Defendant Worrell suggests that ADA Winkelman's testimony omitted information and created a "gap" of information pertaining ADA Nelson's involvement in the DAO's review of Plaintiff's PCRA claims. *See* Defendant Worrell's Response in Opposition, ECF No. 55, at 5–6, 14. No such gap or omission exists. A cursory review of ADA Winkelman's deposition testimony reveals that she was specifically asked about the involvement of ADAs Napiorski and Ernst, and was never asked about ADA Nelson, ostensibly because ADA Winkelman's

role involved editorial review of the brief and did not involve review of the factual record.[1] *See* Appendix to Defendant Worrell's Response in Opposition, A.75 at (30:1–4); A.76 at (31:6–15); A.82–87 at (51:19–56:8).[2]

---

[1] Defendant Worrell attempted to impeach ADA Winkelman by, *inter alia*, suggesting that she misrepresented that the Commonwealth undertook a thorough and careful review of the record when she did not personally conduct document-by-document review of the record, despite the appearance of her name on the Commonwealth's PCRA Response. *See* Appendix to Defendant Worrell's Response in Opposition, at A.76 (31:6–15); A.82–87 at (51:19–56:8); A.98 at (83:2–83:8). This is simply unreasonable. As the former Supervisor of the Law Division for the largest prosecutor's office in the Commonwealth, ADA Winkelman's name appeared on thousands of briefs that were principally authored by her subordinate employees, as did the name of the elected District Attorney, and as is common practice across the legal profession. Supervisory attorneys generally do not, and as a practical matter *could not*, duplicate each task that is delegated to a subordinate attorney, as this would defeat the purpose of delegating tasks to line attorneys. This in no way casts doubt on the Commonwealth's careful review of the factual record or its seventy-nine page brief setting forth the basis for its position, nor does it bear any relevance to Plaintiff's present civil rights claims against Defendant Worrell.

[2] By way of additional example, Defendant Worrell erroneously asserts that the Commonwealth never independently verified "numerous allegations it nevertheless adopted as true", *i.e.*, regarding allegations that witnesses had recanted prior inculpatory statements implicating Plaintiff and allegations of police coercion. *See* Defendant Worrell's Response in Opposition, ECF No. 55, at 8, 13. To the contrary, ADA Napiorski's prior deposition testimony and the Commonwealth's PCRA Response make clear that the Commonwealth did not adopt, endorse, or advance such allegations, but merely noted their existence, and in fact "[took] no position on their reliability or credibility" because they did not bear on the disposition of Plaintiff's *Brady* claims. *See* Exhibit "A" to DAO's Motion to Quash (ECF No. 53-1), at 12 n.5; *see also* Appendix to Defendant Worrell's Response in Opposition, at A.12 at (24:13–24:20). Indeed, Defendant Worrell is mentioned in the Commonwealth's brief only once outside of the Background section. *See* CW Response at 69.

More fundamentally, Defendant Worrell mischaracterizes ADA Napiorski's testimony by claiming that he "conceded" that the Commonwealth's PCRA Response "contained material inaccuracies and misleading factual characterizations, including imprecise and incorrect descriptions of the DNA evidence[,]" and "assertions that there was 'no blood' on Mr. Ramirez on the night of the murder despite contemporaneous witness statements reflecting otherwise." *See* Defendant Worrell's Response in Opposition, ECF No. 55, at 5. This is unsupported even by Defendant

Moreover, beyond the fact that information about the DAO's post-conviction review process or internal attorney assignments is not proportional to the needs attendant to *any relevant issues* in the case, the record created in this matter unequivocally demonstrates that ADA Nelson was subsequently co-assigned to assist the principally assigned attorney, ADA Napiorski, and that ADA Nelson played a limited role in this process, which consisted of reviewing internal files, as well as files in the Office of Judicial Records of the First Judicial District of Pennsylvania, and attending strategic internal meetings about the case. *See* Exhibit "G" to DAO's Motion to Quash (ECF No. 53-1) at 9, 88; Exhibit "H," at 25-26.[3]

---

Worrell's own citations to the record. At most, ADA Napiorski acknowledged that the Commonwealth's description of the DNA evidence, which was not material to analysis of Plaintiff's *Brady* claims, could have been worded differently in one particular instance. *See* Appendix to Defendant Worrell's Response in Opposition, at A.36 at (53:22–23). In any event, the Commonwealth's PCRA Response makes clear that it "takes no position on Ramirez after-discovered DNA evidence claim[.]" Exhibit "A" to DAO's Motion to Quash (ECF No. 53-1), at 45. Lastly, the witness statement pointed to by Defendant Worrell as alleging that Plaintiff had a spot of blood on his shirt was not presented at trial, so was immaterial to the *Brady* claims that won him relief. Indeed, the lack of blood on Plaintiff was an issue at trial forcing the trial prosecutor to spend part of his closing argument attempting to persuade the jury to convict Plaintiff *despite* the apparent absence of blood on him, aside from the drop of blood allegedly on one of Plaintiff's boots. *See* N.T., 12/29/1995 at 96, 99–103.

[3]    While none of this information is germane to any claims or defenses at issue in this case, Defendant Worrell also misstates prior deposition testimony by claiming that Plaintiff's PCRA petitions were "reassigned" and "removed from its ordinary track and redirected to the federal litigation unit." Defendant Worrell's Response in Opposition, ECF No. 55, at 2–4. However, prior deposition testimony clearly reveals that Plaintiff's then-new PCRA claims were not "reassigned" or "removed" from any ordinary track; rather, after Plaintiff had pursued federal habeas corpus relief, his federal litigation was stayed pending exhaustion of his state post-conviction remedies. *See* Appendix to Defendant Worrell's Response in Opposition, at A.4–A.5 at (9:1–10:4). When Plaintiff's new PCRA petitions were filed, ADA Napiorski, then in the DAO's Federal Litigation Unit, was assigned to review and respond to Plaintiff's claims, and ADA Nelson, then a line-ADA in the PCRA unit, was co-

Defendant Worrell baselessly asserts that the deposition of ADA Nelson is needed because, purportedly, none of the DAO's prior deponents "fully accounted for the circumstances underlying the DAO's reversal nor explained the omissions and misrepresentations presented to the PCRA court," and that the prior testimony "produced critical gaps, unexplained inconsistencies, and conspicuous omissions[.]" Defendant Worrell's Response in Opposition, ECF No. 55, at 14. Defendant's mischaracterizations of prior deposition testimony and the Commonwealth's PCRA Response are demonstrably false. To begin with, the Commonwealth's position is fully accounted for in the seventy-nine page PCRA Response, which indicates that the basis for the Commonwealth's concession was violations of Plaintiff's constitutional rights pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Exhibit "A" to DAO's Motion to Quash (ECF No. 53-1), at 1–3.

The prior deposition testimony and Commonwealth's PCRA Response provide a fulsome picture of the Commonwealth's basis for its position, and reflects no misrepresentations, omissions, or "unanswered factual questions" remaining, let alone any which could arguably be relevant to the present civil rights action. As set forth more fully below, it is clear that Defendant Worrell mischaracterizes the record in this matter in an attempt to justify further deposition testimony, primarily in order to attempt, once more, to elicit the content of privileged internal discussions and

---

assigned to assist ADA Napiorski. *See Id.* The fact that a different ADA had previously worked on Plaintiff's *prior* PCRA petitions does not suggest that this matter was "removed" or "reassigned", but rather, that a new PCRA petition was filed and was assigned to a different attorney. *See* Appendix to Defendant Worrell's Response in Opposition, A.30 at (30:20–23); A.38 at (73:5–9).

attorney's mental impressions regarding the Commonwealth's position in advance of the state court's independent review.

Consequently, Defendant Worrell has failed to establish any basis grounded in the Rules of Civil Procedure which would meet his burden to justify the deposition presently sought, and the DAO's Motion to Quash should be granted for this reason alone.

### ***Undue Burden on a Non-party***

Defendant Worrell essentially demurs and shrugs off the significant undue burden imposed by his unnecessarily cumulative subpoena issued to a supervisory employee of the non-party DAO. Rather than engaging with the applicable legal framework, Defendant Worrell hastily dismisses the considerable undue burden that compliance with his subpoena would unreasonably impose on the non-party DAO. Analysis of undue burden expressly includes consideration of "'relevance, the need for the information requested, whether the information can be obtained by other means, burdens the subpoena may impose, *the status of the recipient as a non-party*, and the costs of compliance.'" *Hu v. Merck Sharp & Dohme LLC*, No. 23-754, 2023 WL 5598450, at \*2 (E.D. Pa. Aug. 29, 2023) (quoting *Rardon v. Falcon Safety Prods., Inc.*, Nos. 23-1594 & 23-1596, 2023 WL 5347298, at \*2 (3d Cir. Aug. 21, 2023)).

Perhaps because Defendant Worrell has opted to proceed in this matter as if the non-party DAO were a party-opponent, Defendant Worrell is completely silent on the DAO's status as a non-party, which is a determinative factor in the context of this discovery dispute. Defendant Worrell does not dispute that the non-party DAO has

already made three of its most senior attorneys available for prior depositions. Defendant Worrell does not contest that each of these appearances necessitates preparation with counsel and removes these public servants from their daily responsibilities for purposes of this third-party litigation. Nor does Defendant Worrell justify these burdens by reference to any relevant, non-cumulative, and non-privileged information that the deposition would ostensibly uncover, let alone any information that would be proportional to justify the burden of a fourth deposition of DAO supervisory staff on the same topic.

The unreasonableness of the resulting burden on the DAO is even more apparent in consideration of the fact that Defendant Worrell has already had ample opportunity to obtain the requested information at the three prior depositions on the same topic, or by less burdensome means of discovery, such as narrowly-tailored written discovery directed to the DAO or ADA Nelson. Moreover, Defendant Worrell has not identified any unique, non-privileged information in ADA Nelson's possession that would justify his unnecessarily repetitive subpoena by making it proportional to the needs of this case. Because Defendant Worrell's subpoena needlessly imposes an undue burden on the non-party DAO, this Court must quash Defendant Worrell's subpoena pursuant to Rule 45(d)(3)(iv) alone. Fed.R.Civ.P. 45(d)(3)(iv); *see also* Fed.R.Civ.P. 26(b)(2)(i)-(ii).

### *Privilege*

Defendant Worrell does not dispute that the core information he has repeatedly sought to uncover from the DAO throughout discovery in this matter falls

squarely within the protections of the deliberative process privilege and the attorney work-product doctrine. Instead, Defendant Worrell argues that the DAO's assertion of privilege is premature and not absolute. *See* Defendant Worrell's Response in Opposition, ECF No. 55, at 18–19.

Defendant Worrell cites *Constand v. Castor*, No. 15-5799, 2016 WL 5681454 (E.D.Pa. Oct. 3, 2016) for the proposition that the DAO's invocation of privilege is premature. However, *Constand* is readily distinguishable from Defendant Worrell's established pattern of unreasonable attempts to uncover privileged and non-discoverable information in this matter. In *Constand*, no deposition had yet occurred, no questions had yet been asked, and no privileges had yet been invoked. *Constand*, 2016 WL 5681454, at *6. Here however, Defendant Worrell has already repeatedly sought to uncover the content of privileged discussions and mental impressions of attorneys for the Commonwealth at three prior depositions, prompting well-founded objections and instructions not to answer from counsel.[4]

Unlike in *Constand*, there is already a ripe "concrete dispute" surrounding the DAO's proper invocation of the deliberative process privilege and attorney work-product doctrine and Defendant Worrell's incessant attempts to improperly elicit information that falls within the protections of these privileges. *Id.* There is already an adequate record from which the Court can determine the propriety of the DAO's

---

[4]   *See* DAO Motion to Quash, at Exhibit "G," at 70 (asking for the content of discussions about whether to retry Plaintiff's case); Exhibit "H," at 37 (asking for the decision-making process in deciding whether to retry Plaintiff's case); Exhibit "I," at 42–44 (asking about the content of internal deliberations and privileged mental impressions of attorneys for the Commonwealth).

assertion of well-settled privileges. It would be a poor use of the DAO's and the parties' time and resources to convene *another* in-person deposition simply for Defendant Worrell to *again* ask for the content of privileged discussions and trigger the same objections from the DAO.

The DAO need not speculate as to whether Defendant Worrell intends to seek improper disclosure of non-discoverable and privileged information. In his reply, Defendant Worrell again confirms that it is his intention to do exactly that. To wit, Defendant Worrell has repeatedly indicated that he seeks to question ADA Nelson about "strategic internal meetings" at which privileged deliberative discussions took place concerning how the Commonwealth would proceed in Plaintiff's underlying PCRA proceedings. *See* Defendant Worrell's Response in Opposition, ECF No. 55, at 10, 12, 14.

Because Defendant Worrell clearly wishes to uncover the content of privileged deliberative communications and the mental impressions of DAO attorneys concerning the Commonwealth's practices during post-conviction proceedings, Defendant Worrell bears a steep burden to demonstrate grounds to overcome these privileges, a burden which he has not come close to meeting. Because Defendant Worrell has not established relevance or proportionality, and has not otherwise justified the undue burden imposed on the DAO by his subpoena, Defendant Worrell has made no "showing of sufficient need for the material in the context of the facts or the nature of the case" nor any other legitimate basis to overcome these privileges. *See Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995).

13

Because Defendant Worrell has failed to establish a need for this information based on relevance and proportionality, there are no valid competing interests to balance against the DAO's textbook invocation of these privileges.

On this basis alone, the DAO submits that there is good cause to quash Defendant Worrell's subpoena, or at a minimum, enter a protective order setting forth limitations on any future non-party discovery, including preclusion of any discovery which seeks to uncover privileged or cumulative information.

### b. Motion for a Protective Order

While the DAO respectfully submits that there are ample grounds recited above upon which this Court "must" quash Defendant Worrell's subpoena or grant other relief pursuant to Rules 26(b)(2) and 45(d)(3), in the event that Defendant Worrell's subpoena is not quashed outright, the DAO also submits that good cause exists to support the entry of a protective order for the same reasons.

Defendant Worrell's argument in this respect confirms that the depositions of non-party employees of the DAO is sought in bad faith for purposes of annoyance, oppression, embarrassment, and undue burden. Defendant Worrell all but concedes that his questioning of ADA Winkelman elicited information about wholly irrelevant disciplinary matters for the express purpose of oppressing the DAO and embarrassing the deponent. *See* Defendant Worrell's Response in Opposition, ECF No. 55, at 20.

Defendant Worrell's established pattern of engaging in burdensome, oppressive, and embarrassing deposition questioning directed to non-party DAO employees is simply uncalled for, particularly when the only conceivable aims of such

14

questioning is either to (a) rehash irrelevant and cumulative testimony that does not speak to the issues in the case, and/or (b) to continue to oppressively seek the disclosure of privileged information over counsel's valid objections and instructions not to answer.

For these reasons, the DAO submits that there is good cause to quash Defendant Worrell's subpoena, or at a minimum, enter a protective order setting forth limitations on any future non-party discovery, including preclusion of any discovery which seeks to uncover the privileged information at issue.

Respectfully submitted,

Date: May 29, 2026

/s/ *Shea Skinner*
Shea Skinner
Assistant District Attorney
Attorney I.D. No. 326121
Three South Penn Square, 13th Floor
Philadelphia, PA 19107
Shea.skinner@phila.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EDUARDO RAMIREZ, | : |
| | : |
| | : |
| Plaintiff, | : Civil Action |
| | : No. 24-cv-3035-JP |
| v. | : |
| | : |
| CITY OF PHILADELPHIA, *et al.,* | : |
| | : |
| Defendants. | : |
| | : |

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that, on May 29, 2026, he personally caused to be served upon all counsel of record a true and correct copy of the foregoing Motion for Leave to File a Memorandum of Law in Reply via this Court's electronic filing system.

Date: May 29, 2026                    /s/ ***Shea Skinner***
                                      Shea Skinner
                                      Assistant District Attorney
                                      Attorney I.D. No. 326121
                                      Three South Penn Square, 13th Floor
                                      Philadelphia, PA 19107
                                      Shea.skinner@phila.gov
                                      (215) 686-7644

16