**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EDUARDO RAMIREZ, *Plaintiff*, v. CITY OF PHILADELPHIA, ET AL., *Defendants*. | : | Civil Action No.: 2:24-cv-03035 |

**ORDER**

**AND NOW**, this              day of                    , 2026, upon consideration of the Motion to Enforce Subpoena, filed by Defendant Detective Paul Worrell, and any Response thereto, it is hereby **ORDERED** that the Motion is **GRANTED**.

It is **FURTHER ORDERED** that:

1. Within seven days of the date of this Order, the nonparty Philadelphia District Attorney's Office ("DAO") **SHALL PRODUCE** all responsive, nonprivileged information sought by the Subpoena and Rider, which are incorporated herein, and shall identify any information withheld on grounds of privilege or protection in accordance with Federal Rule of Civil Procedure 45(e)(2)(A);

2. The Court finds that Movant Paul Worrell made a good-faith effort to confer with the DAO to secure compliance with the subpoena without court intervention; that the DAO, without adequate excuse, failed to comply with the subpoena; and that the DAO has had ample opportunity to be heard;

3. Under FED. R. CIV. P. 45(g), the Court hereby holds the DAO in contempt for its failure to obey the subpoena without adequate excuse.

**BY THE COURT**:

_______________________________

**HON. JOHN R. PADOVA**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO RAMIREZ, *Plaintiff*, v. CITY OF PHILADELPHIA, ET AL., *Defendants*. | : | Civil Action No.: 2:24-cv-03035 |

**MOTION TO ENFORCE SUBPOENA**
**DIRECTED TO THE PHILADELPHIA DISTRICT ATTORNEY'S OFFICE**

Defendant Detective Paul Worrell, by and through the undersigned counsel, Marshall Dennehey, P.C., John P. Gonzales, Esquire, and Joshua W. Brownlie, Esquire, hereby files this Motion to Enforce the Subpoena served on the Philadelphia District Attorney's Office ("DAO").

**CASE ORIENTATION**

The DAO has been obstructing efforts to undertake discovery—expressly permitted by the Federal Rules—into the circumstances surrounding its confession of error in the murder prosecution of Plaintiff Eduardo Ramirez. Its persistent refusal to provide that discovery now requires court intervention—yet again.

The discovery sought is particularly consequential given the broader context in which the DAO's concession occurred. The Third Circuit has identified a "striking pattern of state-court murder convictions that have been overturned in recent years using . . . post-conviction concessions from the Philadelphia DA, untested by the adversarial process." *Johnson v. Mahanoy*, 144 F.4th 178, 187 (3d Cir. 2025). The Pennsylvania Supreme Court has likewise observed that "[i]t is only in Philadelphia

County that there has been a pronounced, documented pattern of highly problematic prosecutorial concessions." *Commonwealth v. Brown*, 358 A.3d 469, 532 (Pa. 2026). And one senior attorney in the DAO has been disbarred from this Court, and another has been suspended for three years, both based on misconduct similar to that which has occurred in the Ramirez murder prosecution and civil litigation. *See In re Paul George*, 2:22-mc-50, at ECF 64 (E.D. Pa.) (Beetlestone, C.J.); *In re Nancy Winkelman*, 2:22-mc-51, at ECF 71 (E.D. Pa.) (Beetlestone, C.J.).[1]

The DAO's "checkered concession program" has thus generated substantiated findings concerning violations of the duty of candor to courts and resistance to efforts to obtain relevant evidence concerning those concessions. *Brown*, 358 A.3d at 477. The Court most recently found "a prima facie showing of conduct that may constitute false statements, false declarations made under oath, perjury, obstruction of justice, and conspiracy" at the highest level of the DAO. *See Johnson v. Nickelson*, 2:15-cv-4965, Mem. Op., ECF 173 at 37 (E.D. Pa. Sept. 15, 2026) (Diamond, J.). The subpoena at issue here seeks precisely the type of contemporaneous internal evidence necessary to determine how the DAO investigated, evaluated, and ultimately conceded Mr. Ramirez's post-conviction claims.

This Court has already rejected the DAO's effort to prevent discovery into that subject. When the DAO sought to quash the deposition of Assistant District Attorney

---

[1] The District Court docket in *In re Nancy Winkelman* was originally maintained under seal. On June 12, 2026, the Third Circuit denied Ms. Winkelman's motion to continue that seal, rendering public the disciplinary proceedings, including the October 27, 2025, Report and Recommendation of a three-year suspension and the March 9, 2026, Order imposing that discipline. *See* Order, *In re Winkelman*, 26-1798 (3d Cir. June 12, 2026).

Julie Nelson, the Court rebuffed its unsupported assertions of privilege and undue burden, concluding that testimony concerning the DAO's investigation and ultimate concession was relevant and properly discoverable. *See* Order, ECF 68.

ADA Nelson's subsequent testimony confirmed not merely that relevant electronic communications likely exist, but that *they do exist*. She testified that case assignments within the DAO occur through email correspondence. *See* A.15 (55:19–57:14).[2] She testified that she communicated with ADA Lori Williamson about this matter by text message.[3] *See* A.14 (48:21–53:12).

More significantly, ADA Nelson's testimony revealed contemporaneous written evidence concerning the DAO's review of the concession itself. She was assigned to investigate Mr. Ramirez's PCRA claims but had "not reached a conclusion for [her]self" when she learned that the DAO would concede relief. A.16 (58:2–65:1). The now-suspended DAO Law Department Supervisor Nancy Winkelman provided her a brief that was "very close to its final form" and tasked ADA Nelson with reviewing it "for any factual inaccuracies." *Id.* (58:17–61:2).

The limits imposed on that review are significant. ADA Nelson testified that she and ADA Lori Williamson understood "that there may be things in the brief that we did not agree with," but resolving those disagreements was "not why we were being asked to review it." A.16 (59:23–60:17). ADA Nelson emphasized that she "was

---

[2] An appendix is respectfully submitted herewith and includes relevant portions of the discovery record.

[3] At the time, ADA Williamson was the assistant supervisor of the PCRA Unit within the DAO, and ADA Nelson was a line ADA in the PCRA Unit.

not asked whether or not [she] agreed with the arguments" or otherwise "agreed with what was in the brief." A.22 (92:1–16). Thus, although ADA Nelson had been assigned to investigate Mr. Ramirez's post-conviction claims and had not independently reached a conclusion about them, her role in reviewing the nearly completed concession was confined to identifying factual inaccuracies—not determining whether the concession itself was supported by her investigation or the underlying factual record. *Id.*

Even that circumscribed review generated two separate lists of issues. ADA Williamson prepared her own list and emailed it to Winkelman, copying ADA Nelson. *See* A.25 (95:4–96:23). ADA Nelson reviewed that list before preparing her own, "deliberately" omitting anything ADA Williamson had already identified. *Id.* ADA Nelson then transmitted her separate list by email to Winkelman, with ADAs Williamson and David Napiorski included on the correspondence. *Id.*; *accord* A.38 (149:6–151:24).

The significance of those communications is difficult to overstate. Winkelman received two separate written lists identifying issues in the nearly final concession brief from attorneys who had been involved in reviewing the matter. One of those attorneys had been assigned to investigate Mr. Ramirez's claims, had not independently reached a conclusion when the DAO decided to concede, and testified that she and ADA Williamson had reservations about what the concession brief said. What those attorneys identified, how Winkelman responded, and whether the identified issues were addressed before the DAO presented the concession to the post-

conviction court bear directly on the accuracy and reliability of the factual basis for the concession upon which Mr. Ramirez now relies.

Yet the DAO produced none of those communications. It did not identify their existence in its original production, disclose that responsive communications had been withheld, or provide a privilege log identifying them or asserting a basis for withholding them. Their existence came to light only because ADA Nelson disclosed them under oath after the DAO unsuccessfully sought to prevent her deposition.

ADA Nelson's testimony did more than identify additional categories of potentially responsive discovery. It revealed specific, concededly existing documents bearing directly on the DAO's review of the factual basis for its concession that had never been produced. That revelation prompted Detective Worrell to serve the subpoena now before the Court.

On July 23, 2026, Detective Worrell served the DAO with a subpoena specifically directed to the documents and electronically stored information that ADA Nelson's testimony had revealed, as well as other communications concerning the DAO's handling of Mr. Ramirez's criminal prosecution, post-conviction proceedings, and subsequent civil litigation. *See* A.68–83. The subpoena seeks, among other things, the emails, text messages, memoranda, drafts, annotations, and other writings reflecting the DAO's investigation, internal review, and decision to concede relief—including the very communications ADA Nelson identified under oath. *Id.*

The DAO responded not by producing those materials or asserting particularized objections, but by again moving for judicial intervention to prevent their discovery. *See* Mtn., ECF 72. The DAO ultimately withdrew that motion

pursuant to a Court-approved stipulation extending its deadline to comply with the subpoena through September 18, 2026. *See* Stip., ECF 77.

But September 18th came and went without a word or compliance. The DAO produced nothing, served no objections, supplied no privilege log, sought no further relief from the Court, and did not even contact Detective Worrell. *See* A.84–88. Instead, he was forced to pursue the overdue discovery himself, contacting the DAO on September 21st and again on September 22nd before receiving any response. *See* A.86–88. And when the DAO did finally respond nearly a week past the extended deadline, it advised that a complete production would not occur until nearly a month *after* the already-extended compliance deadline.[4] *See* A.85.

The procedural posture is therefore straightforward. This Court has already held that discovery into the DAO's investigation and factual basis for its concession is relevant and permissible. The DAO's own attorney then testified under oath that specific responsive electronic communications exist, including two separate written lists identifying issues in the nearly final concession brief. Detective Worrell served a subpoena directed to those materials and others. The DAO obtained additional time to respond through a Court-approved stipulation. And when that extended deadline arrived, the DAO neither produced the documents nor asserted an objection to producing them. Detective Worrell now moves to compel compliance.

---

[4] The DAO also represented on September 24th that it would provide a partial production "within the next week." A.85. That promised deadline likewise came and went without a word or compliance. As of the filing of this Motion, the DAO has not provided even the promised partial production—and again without any communication.

## ARGUMENT

"Subpoenas are essential to obtain discovery from nonparties." FED. R. CIV. P. 45 advisory committee's note to 2013 amendment. The materials sought by means of a Rule 45 subpoena "must fall within the scope of proper discovery" under Rule 26. *Green v. Cosby*, 314 F.R.D. 164, 169 (E.D. Pa. 2016) (Robreno, J.). There, a party may obtain thorough discovery:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). This standard is "broad and liberal," and allows discovery of information that may not otherwise be admissible at trial. *See Pacitti by Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999).

Here, the relevance of the requested discovery has already been decided. *See* FED. R. CIV. P. 26(b)(1). In rejecting the DAO's effort to prevent ADA Nelson's deposition, this Court concluded that Detective Worrell's efforts to investigate "the accuracy and completeness of the factual record assembled by the DAO to reach its ultimate position in favor of Plaintiff's post-conviction relief . . . . properly seeks relevant information regarding the DAO's *procedures and factual findings* that resulted in its concession to the vacating of [the] conviction." Order, ECF 68 at 4, 5–6 (emphasis added).

The present subpoena seeks the documentary evidence underlying precisely that inquiry. *See* A.68–83. It requests contemporaneous communications reflecting how the DAO assigned and investigated Mr. Ramirez's case, what facts its attorneys identified during that investigation, how the concession was drafted and reviewed, what factual inaccuracies were identified before filing, and whether those inaccuracies were corrected. *Id.* Those materials are the contemporaneous evidence of the DAO's "procedures and factual findings" the Court already deemed relevant. Order, ECF 68 at 5–6.

The DAO nevertheless has neither produced those materials nor articulated a lawful basis for withholding them. *See* A.85. That failure is especially untenable because the Court has already addressed the DAO's invocation of privilege. In denying its attempt to prevent ADA Nelson's deposition, the Court explained that, "[w]ith respect to the DAO's position that Defendant Worrell's subpoena seeks the disclosure of privileged information, we believe that the DAO can adequately safeguard against such disclosure by raising proper objections[.]" Order, ECF 68 at 6. The Court thus supplied the mechanism for protecting any legitimately privileged information: assert the privilege and identify the withheld material as the Federal Rules require. *See, e.g.*, FED. R. CIV. P. 45(e)(2)(A).

The DAO did not do so. It produced nothing, objected to nothing, and identified nothing as privileged—even after receiving a Court-approved extension of its response deadline. The DAO has already been reminded that "[a]s officers of the court, lawyers must be candid and forthright." *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 148 (3d Cir. 2024). That obligation is difficult to reconcile with the

DAO's withholding of responsive communications without producing them, identifying them, or or asserting any basis for withholding them.

Rule 45 does not permit that conduct. Indeed, the Advisory Committee specifically cautions that "[a] person claiming a privilege or protection who fails to provide adequate information about the privilege or protection claim to the party seeking the information is subject to an order to show cause why the person should not be held in contempt[.]" FED. R. CIV. P. 45 advisory committee's note to 1991 amendment. And because the requested information falls within the permissible scope of discovery, the DAO bears the burden of establishing why enforcement should not be allowed. *See Vitale v. McAtee*, 170 F.R.D. 404, 406 (E.D. Pa. 1997) (Joyner, J.). But even where a privilege or protection is properly established, Rule 45 permits production "under specified conditions." FED. R. CIV. P. 45(d)(3)(C).

Proportionality considerations likewise weigh decisively in favor of enforcement. *See* FED. R. CIV. P. 26(b)(1). The requested communications are uniquely within the DAO's possession, custody, or control. *See Premium Payment Plan v. Shannon Cab Co.*, 268 F.R.D. 203, 206 (E.D. Pa. 2010) (Pollak, J.) (proportionality assessment considers "the evidence that the party had at the time of the request" and "whether other sources of similar evidence were available"). Detective Worrell has no independent means of obtaining the DAO's internal emails, text messages, drafts, memoranda, annotations, or the two written lists that ADA Nelson specifically identified. And those materials concern a decision of central importance to this litigation: the DAO's decision to concede the validity of the post-

conviction claims that Mr. Ramirez now advances as the factual predicate for imposing civil liability upon Detective Worrell.

The existing record makes those communications particularly important. *See* FED. R. CIV. P. 26(b)(1). The DAO's Conviction Integrity Unit initially declined to concede relief in Mr. Ramirez's case. *See* Det. Worrell's Resp. in Opp'n to DAO's Mtn. to Quash, ECF 55, at 3 n.3. Winkelman then rerouted the case to the DAO's Federal Litigation Unit, which reversed course and conceded relief. *Id.* ADA Nelson's testimony now establishes that she had been investigating the PCRA claims but had not independently reached a conclusion when that decision was made; that she and ADA Williamson understood there were matters in the nearly final concession brief with which they might disagree; and that their narrowly confined factual review nevertheless generated two separate lists of issues transmitted to Winkelman before filing. *See* A.16 (58:2–65:1); A.22 (92:1–16); A.25 (95:4–96:23); A.38 (149:6–151:24).

Those contemporaneous communications may reveal what the DAO knew when it conceded relief, what factual problems its own attorneys identified, and what—if anything—was done about those problems before the concession was presented to the post-conviction court as the DAO's official position. That information bears directly on the "accuracy and completeness of the factual record assembled by the DAO," which this Court has already held relevant because that same record "now forms the factual basis for Mr. Ramirez's civil rights claims against Defendant Worrell." Order, ECF 68 at 4.

And the importance of contemporaneous evidence concerning that process cannot be divorced from the judicial findings that have since emerged concerning the

DAO's concession practices. *See Johnson*, 144 F.4th at 187; *Brown*, 358 A.3d at 477, 532; *Johnson*, 2:15-cv-4965, Mem. Op., ECF 173 at 37; *In re Paul George*, 2:22-mc-50, at ECF 64; *In re Nancy Winkelman*, 2:22-mc-51, at ECF 71. Against that backdrop, Detective Worrell is entitled to the contemporaneous documentary record of what occurred in this case—not merely the DAO's after-the-fact characterization of its process.

The DAO has had every opportunity to comply. It unsuccessfully sought to prevent ADA Nelson's deposition, only for that deposition to reveal specific responsive communications that the DAO had never produced. *See, e.g.*, A.38 (149:6–151:24). The DAO then sought protection from the subpoena directed to those materials, withdrew that request pursuant to a Court-approved stipulation, and obtained additional time to respond. Yet the extended deadline expired without the production of a single document, the assertion of a single objection, or the identification of a single document as privileged. Even after Detective Worrell pursued the overdue discovery himself, the DAO failed to provide the partial production it expressly promised.

The Federal Rules do not permit a subpoena recipient—least of all a public law-enforcement agency whose own concession supplies the asserted factual basis for claims against another public official—to treat compulsory process as optional. The DAO knows these communications exist because its own attorney identified them under oath. It knows the discovery is proper because this Court has already rejected its effort to prevent inquiry into the DAO's investigation and concession. And it knows how to seek judicial protection when it believes discovery is improper because

it did so here—and then withdrew that request. What remains is not a discovery dispute over the permissible scope of the subpoena. It is the DAO's refusal to obey it.

That refusal is contemptuous. *See Wallace v. Kmart Corp.*, 687 F.3d 86, 88 n.4 (3d Cir. 2012). At this point, the DAO's noncompliance cannot fairly be characterized as mere delay. It is a knowing failure to obey compulsory process despite ample time, repeated accommodations, and repeated demands for compliance. After withdrawing its request for judicial protection and obtaining additional time to respond, the DAO neither complied, asserted an objection, nor sought further relief from this Court. Its continued refusal to obey the subpoena is contemptuous, and the Court should so find. *See* FED. R. CIV. P. 45(g).

Accordingly, Detective Worrell respectfully requests that the Court grant this Motion, find the DAO in contempt, and order immediate compliance with the subpoena, including production of all responsive, nonprivileged materials and a privilege log compliant with Rule 45(e)(2)(A).

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: ______________________________
JOHN P. GONZALES
JOSHUA W. BROWNLIE
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(P): (215) 575-2816 | (F): (215) 575-0856
(E): JWBrownlie@MDWCG.com

*Attorneys for Defendant Detective Paul Worrell*

Date: October 2, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO RAMIREZ, *Plaintiff*, v. CITY OF PHILADELPHIA, ET AL., *Defendants.* | : | Civil Action No.: 2:24-cv-03035 |

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Motion to Enforce was electronically filed with the Court on this date and is available for viewing and downloading from the Electronic Case File System. All counsel of record were served via electronic notification.

Respectfully Submitted,

**MARSHALL DENNEHEY, P.C.,**

BY: ______________________________
JOHN P. GONZALES
JOSHUA W. BROWNLIE
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(P): (215) 575-2816 | (F): (215) 575-0856
(E): JWBrownlie@MDWCG.com

*Attorneys for Defendant Detective Paul Worrell*

Date: October 2, 2026